

# NUMBER 13-16-00511-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE INTEREST OF J.H., V, A CHILD

## On appeal from the 36th District Court
of San Patricio County, Texas.

## MEMORANDUM OPINION

### Before Justices Rodriguez, Contreras, and Longoria
### Memorandum Opinion by Justice Contreras [1]

Appellant J.H. IV appeals the termination of his parental rights to his biological son,

J.H. V, a child.[2]  By a single issue, appellant argues that the evidence was legally and

factually  insufficient  to  support  findings  under  parts  (D)  and  (E)  of  subsection

---

[1] Justice Dori Contreras, formerly Dori Contreras Garza.  *See* Tex. Fam. Code Ann. § 45.101 *et seq.* (West, Westlaw through 2015 R.S.).

[2] We refer to appellant and the child by their initials in accordance with the rules of appellate procedure.  *See* Tex. R. App. P. 9.8(b)(2) (providing that, in an appeal arising out of a case in which the termination of parental rights was at issue, "the court must, in its opinion, use an alias to refer to a minor, and if necessary to protect the minor's identity, to the minor's parent or other family member").

161.001(b)(1) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E) (West, Westlaw through 2015 R.S.). We affirm.

## I. BACKGROUND

J.H. V was born on July 31, 2015 to J.M., his mother, and appellant, his father. On August 31, 2015, the Department of Family Protective Services (the "Department") filed a petition to terminate appellant's parental rights, alleging that: (1) appellant knowingly placed or knowingly allowed J.H. V to remain in conditions or surroundings which endanger the child's physical or emotional well-being; (2) appellant engaged in conduct or knowingly placed J.H. V with persons who engaged in conduct which endangered the child's physical or emotional well-being; and (3) termination was in J.H. V's best interests. *See id.* § 161.001(b)(1)(D), (b)(1)(E), (b)(2). On August 3, 2016, the Department filed an amended petition alleging that appellant had committed these and several other acts and omissions referenced in subsection 161.001(b)(1). *See id.* § 161.001(b)(1)(A)–(K), (M)–(Q).

At a bench trial on August 23, 2016, George Butcher, a deputy United States Marshal, testified that he was assigned to assist locating and apprehending appellant, who was wanted in Houston on a state charge of aggravated assault with a deadly weapon, family violence. *See id.* § 71.004 (West, Westlaw through 2015 R.S.) (defining "family violence"). Butcher was advised of the location of appellant's residence in Portland, Texas, and of a car that appellant was driving. He observed the car at the residence on the morning of August 27, 2015. According to Butcher, appellant and J.M. exited the residence while "engaged in a verbal argument." Butcher testified that, "[w]ithin a couple of minutes at most I observed and my partner observed [appellant] pull out what

2

appeared to be a knife, and he had raised it above his head as in what we thought he may be trying to assault or stab her." Butcher then advised local police to execute the warrant for appellant's arrest. He testified that he saw "several" young children at the residence later that day. Butcher learned later that the object wielded by appellant was not a knife, but rather a screwdriver.

Police officer Rachelle Farmer testified that J.M. recounted that appellant had "placed her in a choke hold and strangled her" that morning. According to Farmer, J.M. said that she and appellant had been arguing because "he was not supposed to be at the residence with the children" due to a "prior domestic violence incident" involving appellant assaulting her, which resulted in J.H. V being removed from their custody. Farmer observed abrasions on J.M.'s neck, which J.M. said were the result of the prior incident. J.M. told Farmer that appellant had threatened to contact Child Protective Services ("CPS") and have her children removed if she did not relinquish her rights to J.H. V. Farmer stated that, on the day of the arrest, J.H. V had already been removed and was not at the residence.

Robin Castle, another police officer, testified that she was assigned to investigate a family violence case on April 25, 2015. At that time, J.M. had a scrape near her eye and a large bruise on her shoulder. J.M. told Castle that appellant had hit her with his fists and choked her and that, a few days earlier, appellant had hit or kicked her in the stomach area, which she believed caused her to suffer a miscarriage. Appellant was arrested.

Eva Yanira Perez, a CPS investigator, testified that she was assigned to the case on August 19, 2015, after there were reports that appellant had physically abused E.C.,

3

one of five children living with appellant and J.M. at the time.[3]  Perez agreed that the allegations of abuse were "substantiated" by medical staff reports which showed "injuries" and "non-accidental trauma."[4]  She stated that a safety plan was put in place advising both parents "that there was to be no contact with [appellant] with the children in the home."

On August 27, 2015, Perez was advised that appellant and J.M. had engaged in a verbal and physical altercation, and that two children were "inside the home the whole time."  At the time, J.M. V was staying with his paternal aunt.  Perez advised appellant and J.M. that "they had not adhered to the safety plan."  The two remaining children were removed from the home, and J.M. V was removed from the custody of his paternal aunt.  Perez testified:  "There was a lot of domestic violence, and we were concerned for the safety of the children being that the aunt, who was supposed to be caring for the children, had not been there, had left the children alone with [J.M.], and [appellant] had been in the home."  J.H. V was placed with a different paternal aunt.

Perez agreed with the attorney ad litem that she had stated in an affidavit that J.M. was hospitalized in May 2015, while she was pregnant with J.H. V, after appellant "beat her up" and "r[a]n her over with his truck."

Michelle Mckenna, a caseworker for the Department, testified that appellant signed a Family Service Plan on January 20, 2016.  At the time, appellant had just been released from being incarcerated on an assault-family violence charge in Galveston County, and he "went back to jail" on January 31, 2016, due to another altercation with J.M., for which

[3] Perez stated that appellant is J.H. V's father but is not the father of the other four children.

[4] She agreed with the attorney ad litem that E.C. suffers from a speech impairment, and that, when E.C. "made her outcry," she said the words "[appellant's first name] pow pow."

4

charges were eventually dropped. Mckenna stated that there is an "extreme pattern of domestic violence" between appellant and J.M. According to Mckenna, appellant did not comply with the Family Service Plan's requirements that he attend anger management and parenting classes or that he provide safe, stable, and appropriate housing for the child; he has not provided proof of employment; and he has had inconsistent visits with J.H. V. Mckenna agreed that appellant has knowingly placed or allowed J.H. V to remain in conditions or surroundings that would endanger his physical or emotional well-being, and she agreed that it would be in the child's best interests for appellant's parental rights to be terminated.

Appellant testified that he failed to comply with various aspects of the Family Service Plan, but that was because he lives in Houston and was waiting for Mckenna to set up his services there. He said he has been arrested three times since the case started about one year prior to trial, that he has been incarcerated for about half that time, and that he has been convicted only once. He denied ever physically abusing J.M. and he specifically denied threatening J.M. with a screwdriver on August 27, 2015. He stated that, in May 2015, J.M. fell out of a truck he was driving when she reached over to get a cell phone and he drove over a tree stump.

In closing, counsel for the Department asked the trial court to terminate appellant's parental rights based on appellant's "failure to complete any of the items of his Family Service Plan . . . other than the visitation . . . and coupled with the continuous domestic violence." Appellant's counsel noted that appellant made an effort to have services transferred to Houston, but that the transfer was not done. Counsel asked the trial court to "take into consideration the lateness [of] the amendment" of the Department's petition,

5

noting that "they had only specified a couple of grounds until . . . very recently" and arguing that "that's a way for the [D]epartment to unjustly come into court today and say that [appellant] didn't do a lot of the things that they are alleging that he didn't do when he wasn't provided the notice."

The trial court rendered judgment terminating appellant's parental rights, finding by clear and convincing evidence that appellant had, as alleged in the Department's original petition, committed acts under parts (D) and (E) of family code subsection 161.001(b)(1), and that termination of the parent-child relationship is in J.H. V's best interests. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (b)(1)(E), (c).[5] This appeal followed.

## II. DISCUSSION

### A. Standard of Review and Applicable Law

Involuntary termination of parental rights involves fundamental constitutional rights and divests the parent and child of all legal rights, privileges, duties and powers normally existing between them, except for the child's right to inherit from the parent. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re L.J.N.*, 329 S.W.3d 667, 671 (Tex. App.—Corpus Christi 2010, no pet.). "Termination of parental rights, the total and irrevocable dissolution of the parent-child relationship, constitutes the 'death penalty' of civil cases." *In re K.M.L.*, 443 S.W.3d 101, 121 (Tex. 2014) (Lehrmann, J., concurring). Accordingly, termination proceedings must be strictly scrutinized. *Id.* at 112. In such cases, due process requires application of the "clear and convincing" standard of proof. *Id.* (citing

---

[5] The trial court's order also terminated the parental rights of J.M., who had previously voluntarily relinquished her parental rights. J.M. is not a party to this appeal.

*Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002)). This intermediate standard falls between the preponderance of the evidence standard of civil proceedings and the reasonable doubt standard of criminal proceedings. *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980); *In re L.J.N.*, 329 S.W.3d at 671. It is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West, Westlaw through 2015 R.S.).

The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that: (1) the parent committed an act or omission described in family code subsection 161.001(b)(1); and (2) termination is in the best interest of the child. *Id.* § 161.001(b); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005).

In reviewing the legal sufficiency of evidence supporting termination, we "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.L.*, 163 S.W.3d at 85; *In re L.J.N.*, 329 S.W.3d at 671. We must assume that the fact finder resolved disputed facts in favor of its finding if it was reasonable to do so. *In re L.J.N.*, 329 S.W.3d at 671. We must also consider undisputed evidence, if any, that does not support the finding. *In re K.M.L.*, 443 S.W.3d at 113; *see In re J.F.C.*, 96 S.W.3d at 266 ("Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence.").

When reviewing the factual sufficiency of the evidence supporting termination, we determine "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the [Department]'s allegations." *In re C.H.*, 89

7

S.W.3d 17, 25 (Tex. 2002). In conducting this review, we consider whether the disputed evidence is such that a reasonable finder of fact could not have resolved the disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

## B. Analysis

Appellant contends on appeal that there was no evidence that he ever neglected, abused, or endangered J.H. V, and that the only evidence regarding his relationship with the child was appellant's own testimony. He argues that the only evidence supporting the two grounds for termination under subsection 161.001(b)(1) was of acts that allegedly took place outside the presence of child.[6]

Under part (E), the evidence must have been sufficient to allow the trial court to have formed a firm belief or conviction that appellant engaged in conduct or knowingly placed J.H. V with persons who engaged in conduct which endangered J.H. V's physical or emotional well-being. TEX. FAM. CODE ANN. § 161.001(b)(1)(E). "Endanger" means "to expose to loss or injury; to jeopardize." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). The term means "more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment," but "it is not necessary that the conduct be directed at the child or that the child actually suffers injury." *Id.* The parent's conduct before and after the child is born is relevant. *In re R.F.*, 115 S.W.3d

---

[6] Appellant's brief does not contain any references to the trial record. *See* TEX. R. APP. P. 38.1(i). However, we choose in our sole discretion to accept the brief and consider the arguments made therein.

804, 810 (Tex. App.—Dallas 2003, no pet.). Danger to a child need not be established as an independent proposition and may be inferred from parental misconduct. *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 616–17 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). The relevant inquiry is whether evidence exists that a parental course of conduct endangered the child's physical or emotional well-being. *Id.*

Here, evidence showed that appellant repeatedly engaged in acts of domestic violence, both before and after the birth of J.H. V. Castle testified that, on April 25, 2015, J.M. reported that appellant hit her and choked her. Perez, the CPS investigator, agreed that she had stated in an affidavit that appellant "beat [J.M.] up" and "r[a]n her over with his truck" in May 2015 while she was pregnant with J.H. V. Perez further testified that there were substantiated reports that appellant had physically abused one of J.M.'s other children, E.C., who specifically mentioned appellant's first name in her outcry. Butcher testified that he observed appellant threaten to stab J.M. on August 27, 2015 with what was later shown to be a screwdriver. This occurred while there were several young children in the house. Farmer stated that J.M. had abrasions on her neck and that J.M. reported that appellant had strangled her that day. Mckenna, the Department caseworker, testified that appellant was released from jail on a family violence charge on January 20, 2016, and that he returned to jail eleven days later as a result of another domestic altercation.

Though appellant denied physically abusing J.M., he conceded that he has been arrested three times since the case started. He also stated that he had been imprisoned for six out of the twelve months prior to trial. Mere imprisonment will not, standing alone, constitute engaging in conduct that endangers the physical or emotional well-being of a

9

child.  *See Boyd*, 727 S.W.2d at 533.  However, when all of the evidence, including imprisonment, shows a course of conduct that has the effect of endangering the physical or emotional well-being of the child, a finding of endangerment under part (E) is supportable.  *Id.* at 534.  If the imprisonment of the parent displays a voluntary, deliberate, and conscious course of conduct, it qualifies as conduct that endangers the child.  *Walker*, 312 S.W.3d at 616–17.  The evidence here established exactly that.  As Mckenna noted, the record reveals an "extreme pattern of domestic violence" between appellant and J.M. which continued after J.H. V was born and after the service plan was instituted.  This evidence was legally and factually sufficient to support the trial court's finding by clear and convincing evidence, under part (E) of subsection 161.001(b)(1), that appellant engaged in conduct which endangered J.H. V's physical or emotional well-being.  *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E).

Because we find sufficient evidence to support a finding under part (E) of subsection 161.001(b)(1), we need not address whether the evidence was sufficient to support a finding under part (D) of that statute.  *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) ("Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest."); *see also* TEX. R. APP. P. 47.1.[7]  We overrule appellant's issue on appeal.

---

[7] On appeal, appellant does not dispute that the evidence was sufficient to support the trial court's finding that termination of his parental rights is in the child's best interest.  *See* TEX. FAM. CODE ANN. § 161.001(b)(2).

### III. Conclusion

The trial court's judgment is affirmed.

DORI CONTRERAS
Justice

Delivered and filed the
12th day of January 2017.